IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JERRY WAYNE LAWSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-19-399-JFH-SPS |
| ) | |
| **ANDREW M. SAUL,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

**REPORT AND RECOMMENDATION**

The claimant Jerry Wayne Lawson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-four years old at the time of the administrative hearing (Tr. 36). He completed high school and one year of college and has worked as a combat rifle crew member (Tr. 23-24, 226). The claimant alleges he has been unable to work since June 12, 2014, due to thoracic outlet syndrome, degenerative disc disease, cervical bone chips, left carpal tunnel, restless leg syndrome, chronic leg pain, hypertension, eczema, tinea pedis both feet, eyelid myokymia, hemorrhoids, high liver enzymes, erectile dysfunction, hypogonadism, short temperament, depression, short term memory loss, muscle spasms, and neuropathy (Tr. 225).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on January 25, 2017. His application was denied. ALJ Angelita Hamilton conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated December 3, 2018 (Tr. 15-25). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found the claimant retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, he is able to lift/carry twenty pounds occasionally and ten

pounds frequently, stand and/or walk for six hours out of an eight-hour workday, and sit for six hours out of an eight-hour workday. The ALJ further found that the claimant could occasionally climb ladders/ropes/scaffolds, stoop, kneel, crouch, and crawl; frequently climb ramps/stairs, balance, and reach overhead with bilateral upper extremities. Additionally, she found he must be limited to simple, routine, and repetitive tasks, and have only occasional interaction with co-workers, supervisors, and the public, but that he must be free of production rate pace work (Tr. 19-20). The ALJ thus concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *e. g.*, housekeeping cleaner, cafeteria attendant, and fast food worker (Tr. 23-25).

## Review

The claimant alleges that the ALJ erred in assessing the claimant's RFC. Specifically, he alleges the ALJ improperly disregarded evidence of a permanent impairment established prior to his alleged onset date, failed to consider his neuropathy, failed to account for his obesity, and failed to fully account for his mental impairments when she found he could engage with the general public occasionally. The undersigned Magistrate Judge agrees that the ALJ failed to properly assess the claimant's RFC here, and the Commissioner's decision should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of degenerative disc disease and major depressive disorder, but that his left carpal tunnel, restless leg syndrome/chronic leg pain, hypertension, eczema right hand, tinea pedis, eyelid myokymia, hemorrhoids, high liver enzymes, erectile dysfunction, hypogonadism, muscle

spasms, and neuropathy were nonsevere (Tr. 17). Relevant medical records reflect that, prior to the alleged onset date of June 12, 2014, the claimant was diagnosed with thoracic outlet syndrome years before. In 2012, treatment notes indicate that the claimant had undergone two surgeries in the neck area, but still experienced numbness and tingling in both hands and all fingers, as well as occasional shooting pain up to the elbows and numbness in the neck, arms, and shoulders (Tr. 412-414). He was also noted to have mechanical low back strain with mild left sciatica, intermittent; mechanical cervical muscle strain; tinea pedis, both feet; restless leg syndrome; and hemorrhoids (Tr. 415). A June 2012 treatment note indicated the claimant had cervicalgia and numbness of the arm and pain, and had further appointments to address the cervical spine (Tr. 444). Noting the persistent dysesthesias of both upper extremities in September 2012, Dr. David Franco was unable to confirm a definitive neurological diagnosis but noted the claimant had features that at least supported carpal tunnel syndrome although surgical intervention was not suggested at the time (Tr. 456).

In March 2014, the claimant was being treated for hypertension and chronic pain, although his primary diagnosis December 2013 was thoracic outlet syndrome (Tr. 325-326). In May 2014, he was treated for swelling of the ankles, but also reported a worsening grip and dropping things at least once a week due to numbness in his hands (Tr. 359). At that time, he reported nerve damage and carpal tunnel syndrome in his left wrist (Tr. 359).

Following the June 12, 2014 alleged onset date, treatment notes in October 2014 recorded continued chronic pain/neuropathy including pain/tingling/burning in the hands, related to his thoracic outlet (Tr. 605). On June 1, 2015, Dr. Meryl Severson completed a

medical report on the claimant after a physical evaluation (Tr. 387). Noting the claimant was on pain medication for his thoracic outlet syndrome, Dr. Severson stated that such medications may be masking his true responses, but also noted that the claimant was the first person she had seen cry doing range of motion when he exhibited 10/10 pain on abduction and forward elevation of his arms (Tr. 392). She stated that he would be able to stand for up to thirty minutes and lift and carry a maximum of fifteen pounds but would have great difficulty using his arms above shoulder level due to pain. She stated that, due to medications, he should not operate a motor vehicle, and likewise that he should not work in proximity of or operation of heavy machinery, unprotected heights, or ladders/scaffolding (Tr. 393). She assessed him with, *inter alia*, thoracic outlet syndrome, bilateral with decreased abduction of the arms, mild degenerative lumbar disc disease, cervical bone chips with decreased rotational and lateral flexion, left carpal tunnel syndrome possibly secondary to thoracic outlet syndrome, chronic leg pain/restless legs, hypertension, and mild myopia, OD (Tr. 392-393).

On August 24, 2015, the claimant reported reduced feeling in his fingertip, as well as pain from finger to elbow (Tr. 1228). That same month, his weight was recorded at 289 pounds, but he refused a referral to a weight loss management program (Tr. 1239). In September 2015, the claimant was referred for physical therapy for his low back pain (Tr. 1077). During this time, the claimant's weight was noted to be 290 pounds (Tr. 1217).

On December 1, 2015, the claimant presented to the emergency room for treatment of a cough, and the physical exam did not record any abnormalities (Tr. 781). However, when he presented to the emergency department on November 3, 2016 for back pain, he

was positive for myalgias, back pain, and arthralgias, as well as numbness, but he had no joint swelling or gait problems (Tr. 796). Further physical exam of the lumbar spine revealed decreased range of motion, tenderness, and pain, but no bony tenderness (Tr. 797). After continuing to report low back pain, the claimant was referred to physical therapy for myofascial pain including radiculopathy, difficulty resting/sleeping, and standing/sitting tolerance (Tr. 1046). On May 11, 2017, the physical therapist noted that all goals had been met except for low back pain, and the claimant reported sleeping, sitting, and standing better (Tr. 1012).

On May 6, 2017, Dr. Alan Miner conducted another physical examination of the claimant (Tr. 806). He noted the claimant's weight at 277 pounds (Tr. 808). The claimant had a normal gait and did not use an assistive device, and his hands and fingers appeared normal such that he was able to button and unbutton a shirt, pick up and grasp a pen to write a sentence, and lift, carry, and handle personal belongings (Tr. 809). He was able to get up and down from the exam table, perform heel/toe walking, and had normal walking but was unable to hop on either foot (Tr. 810). He noted the claimant had elevated blood pressure and decreased range of motion in his back, neck, and knees bilaterally (Tr. 810).

As to his mental impairments, in April 2017 the claimant was diagnosed with a mood disorder, anxiety disorder, insomnia, and ED, and was referred to group therapy for anger management as well as RED and ATS (Tr. 837). On September 30, 2017, Dr. Dana Foley, Ph.D., completed a psychological report of the claimant (Tr. 1446-1450). Dr. Foley assessed him with PTSD and major depression, recurrent, moderate, noting that he has significant impairment in his social functioning secondary to the PTSD. She opined that

the PTSD likely caused some occupational impairment as well, in additional to the occupational impairment he experienced due to his physical problems (Tr. 1449).

On April 12, 2018, Dr. Shannon Thomas, D.O., the Staff Psychiatrist at the VA, wrote a letter indicating that she had treated the claimant since April 2018, and he had a diagnosis of mood disorder and anxiety disorder (Tr. 1645). Her letter states that the claimant had noted worsening irritability, anger, and anxiety particularly in public and around people, including a history of verbal altercations (Tr. 1645). Additionally, she stated that he reported difficulty with short term memory, insomnia, and chronic pain that further affected his daily activities (Tr. 1645).

On May 15, 2018, Dr. Toney Melborn from the Oklahoma City VA Medical Center completed a physical RFC assessment of the claimant, indicating that he could sit/stand/walk two hours each in an eight-hour workday, but that he could not work an eight-hour day at any level even with a sit/stand option (Tr. 1646). He indicated the claimant could lift up to twenty pounds, but not repetitively; and that he could not handle objects; but that he could push with his feet with light pressure controls only (Tr. 1646). He commented that the claimant had thoracic outlet syndrome with nerve damage in the hands preventing gripping and fine manipulation, as well as low back pain preventing prolonged sitting, standing, and walking (Tr. 1646).

At the initial stage, reviewing physician Dr. Matheen Khan found the claimant could perform light work with no additional limitations (Tr. 88-91). On reconsideration, Dr. Suzanne Roberts found that the claimant could perform light work, but that he could only frequently climb ramps/stairs and balance, and only occasionally climb

ladders/ropes/scaffolds, stoop, kneel, crouch, or crawl (Tr. 108-112). Dr. David Atkins initially determined that the claimant did not have a severe mental impairment (Tr. 85-86). On reconsideration, Dr. Edith King found the claimant's mental impairments *were* severe and caused him moderate limitations in the ability to understand and remember detailed instructions and carry out detailed instructions, and that he was markedly limited in the ability to interact appropriately with the general public (Tr. 112-113). She thus determined the claimant was able to perform simple and some complex work tasks with routine supervision, relate to others on a limited superficial basis, and adapt to a work environment, but that he could not relate well to the general public (Tr. 113).

In her written opinion, the ALJ summarized the claimant's hearing testimony, as well as portions of the medical evidence in the record. In particular, the ALJ noted that there was evidence prior to the date last insured but afforded it little weight because, according to the ALJ, remote evidence in general may not accurately reflect the claimant's functional abilities, although she made no analysis specifically as to the evidence in *this* case and its effect on *this claimant* (Tr. 20-21). The ALJ then summarized Dr. Severson's consultative examination, as well as Dr. Miner's (Tr. 21). She further noted the claimant's treatment for mental impairments through the VA, but found the evidence failed to show a "debilitating level of functional limitation" and that his mental status exams were normal in 2017 (Tr. 21). The ALJ then summarized some of Dr. Foley's consultative findings, including that he had some difficulty with memory functioning, but did not note the occupational difficulties Dr. Foley opined on (Tr 21-22). She concluded that the "overall evidence" supported a light RFC with some postural limitations, that the claimant's

numbness and tingling warranted a limitation to frequent overhead reaching with the bilateral extremities, and that his reports of anger, withdrawal, and irritability were accommodated by only occasional interaction with supervisors, coworkers, and the public (Tr. 22). She then stated circularly that because she had determined her conclusions were appropriate, the RFC assessment was supported (Tr. 22). The ALJ provided no analysis of Dr. Severson, Dr. Miner, or Dr. Foley's findings after summarizing them, and only assigned some weight to Dr. Melborn's opinion because, according to the ALJ, the record failed to support a conclusion that the claimant could not work an eight-hour day or total preclusion of all work activity. Additionally, the ALJ made no mention of the claimant's obesity, and only acknowledged the claimant's thoracic outlet syndrome diagnosis when reciting evidence but not in the context of severe or nonsevere impairments and not in relation to his RFC. She assigned great weight to Dr. Thomas's letter, which made no functional evaluation, and great weight to the state reviewing physicians as to the claimant's physical impairments, but little weight to Dr. King's assessment that the claimant could perform complex work because the ALJ found that complex work was not supported by the record. The ALJ implicitly rejected without explanation, however, Dr. King's limitations as to interactions with the general public. As to the claimant's 60% VA disability rating, the ALJ correctly noted it was not legally binding and stated she had considered it but found the evidence in the record would not "contraindicate claimant's engaging in all substantial gainful activity" (Tr. 23). The ALJ then concluded that the claimant was not disabled.

The claimant contends that the ALJ improperly ignored his diagnosis of thoracic outlet syndrome, including relevant evidence prior to the alleged onset date, and the evidence of its permanent effects, failed to consider his obesity and hypertension, and improperly found he could interact with the general public up to 1/3 of the day. "The RFC assessment (which accounts for the medical evidence *and* the claimant's subjective complaints) must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because [s]he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003).

Because the ALJ did find that the claimant had severe impairments, any failure to find the claimant's additional impairments severe *at step two* is considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating the claimant's RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion

-11-

that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004) *and* 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. But here the ALJ erred at step four when she failed to account for the claimant's nonsevere impairments as she formulated the claimant's RFC. She mentioned the claimant's report of thoracic outlet syndrome and some of the medical records related to it, but she did not even characterize it *or* the claimant's documented obesity as a nonsevere impairment and clearly did not include them in the RFC assessment despite the evidence of multiple findings of limited range of motion, repeated complaints of numbness and tingling throughout the record, and a recommendation for a medical weight loss program.

"To sum up, to the extent the ALJ relied on h[er] finding of non-severity as a substitute for adequate RFC analysis, the Commissioner's regulations demand a more thorough analysis." *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013). This is of particular concern where, as here, there is an indication that the claimant's numerous nonsevere impairments (those recognized at step two and those not recognized at step two)

may nonetheless have had a combined effected in his ability to function where there are multiple treatment records indicating that the claimant's nonsevere physical impairments, along with his severe impairments of, *inter alia*, degenerative disc disease (a pain producing impairment) and depression, may have had a combined limiting effect in his ability to function. *See Baker v. Barnhart*, 84 Fed. Appx. 10, 13 (10th Cir. 2003) ("The ALJ's step-two finding [of the severe impairment of chronic back pain] makes it impossible to conclude at step four that her pain was insignificant][.]"). *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]"). Because the ALJ failed to properly account for all of the claimant's impairments, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis.

It is important to note that "obesity is [a] medically determinable impairment that [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC." *Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007), *citing* Soc. Sec. Rul. 02-01p, 2002 WL 3486281, at *1, *5-*6, *7; *Baker* 84 Fed. Appx. at 14 (noting that the agency's ruling in Soc. Sec. Rul. 02-01p on obesity applies at all steps of the evaluation sequence). A

proper assessment is particularly important given the impact that obesity can have on the musculoskeletal system, *i. e.*, the claimant's severe back impairment and nonsevere impairments of muscle spasms and neuropathy, and the ALJ erred in failing to consider *all* his impairments together. *See* Soc. Sec. Rul. 02-1p, 2002 WL 346862881, at *5. *See also DeWitt v. Astrue*, 381 Fed. Appx. 782, 785 (10th Cir. 2010) ("The Commissioner argues that the ALJ adequately considered the functional impacts of DeWitt's obesity, given that the ALJ's decision recognizes she is obese and ultimately limits her to sedentary work with certain restrictions. But there is nothing in the decision indicating how or whether her obesity influenced the ALJ in setting those restrictions. Rather it appears that the ALJ's RFC assessment was based on 'assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments' – a process forbidden by SSR 02-1p."), *citing* Soc. Sec. R. 02-1p, 2002 WL 3486281, at *6. Because the ALJ made no mention of the claimant's obesity, the undersigned Magistrate Judge cannot conclude that she considered it.

Finally, although an ALJ is not required to give controlling weight to another agency's disability ratings, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), the undersigned Magistrate Judge notes that she *is* required to determine the proper weight to give such findings by applying the factors in 20 C.F.R. §§ 404.1527, 416.927. This is particularly important where, as here, most of the claimant's treatment records were from the VA. Here, the ALJ

simply recognized the existence of the rating without any real analysis. *See Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("The [ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). The undersigned Magistrate Judge finds this to be in error.

Because the ALJ failed to properly evaluate *all* the claimant's impairments singly and in combination, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of all of the claimant's impairments. If such analysis results in any changes to the claimant's RFC—physical impairments, mental impairments, or both—the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to

this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

      **DATED** this 23rd day of February, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**